## *Pierce *versus* Hakes.

1. Where land was devised to the testator's widow for life, and after her death to two granddaughters' and their issue in equal shares, and with a devise over in case both the granddaughters should die and not leave any issue, held that each granddaughter took an estate tail with an implied cross remainder in tail in favor of the other, depending for their actual enjoyment on the determination of the widow's life estate.

2. A married woman having a vested remainder in tail, received a surrender of the particular estate; she thereby acquired such a seisin of the land as entitled her husband on her death to hold as tenant by the curtesy even against the next remainders.

3. The acknowledgment of a deed before a judge of a Court in New York is not void, under the Act of April 10, 1849, because of the omission of the judge to certify that his Court was a Court of record, if the laws of that state show it to be so.

4. A deed acknowledged and delivered by the grantor cannot be said to be executed by an agent, even on proof that the grantor's signature was made by another person at her request.

5. The declarations of a deceased surrenderor of land, made after the surrender, are not evidence to impair the title surrendered; but her admissions are evidence to rebut a charge of fraud in procuring the surrender from her, even though her deed may have the effect of subjecting the estate in remainder to a curtesy estate.

6. A conveyance, made for a nominal consideration and for the mere purpose of barring an estate tail and without the transaction being completed by a reconveyance, can, if it is effectual at all, be treated only as a conveyance of the legal title; leaving the equitable estate still subsisting in the grantor as an equitable fee simple or fee tail according as the bar of the entail was effectual or not.

7. Where a married woman seised of an estate tail joins her husband in a conveyance of it to another for a nominal consideration and for the mere purpose of barring the entail, and dies before it is reconveyed, she dies seised of an estate that is liable to the curtesy of her husband.

ERROR to the Common Pleas of *Luzerne county*.

This was an ejectment to April Term, 1851, by Hannah Pierce, who survived Marmaduke Pierce, James and Samuel Hunlock *v.* Henry Hakes, to recover 100 acres of land in Hanover township, Luzerne county.

Both parties claimed the land in controversy under the will of Samuel Jameson, who died in 1843. The will was made on the 6th September, 1842, and was proved before the register of Luzerne county on the 26th April, 1843. The material portion of this will is in the following words :—

"I will unto my beloved wife, Hannah, all my real and personal estate during her natural life, if she remains my widow, and no longer, and that she support and educate out of my estate, my two granddaughters, Maria Eliza J. Dana and Augusta Paulina J. Dana, until they should settle themselves in a better situation by marrying or otherwise; and if there should be more stock or any

more furniture than my wife should wish to keep, that the same be sold by my executors, and the money arising therefrom, with all the money due me on bonds or notes, be kept on interest, unless the interest should be wanted for the support of my wife and two grandchildren above named; and after the decease of my wife, I will and bequeath unto my two granddaughters, to wit, Maria Eliza J. Dana and Augusta Paulina J. Dana, all my real and personal estate, to them and to their issue, to share alike, equally to be divided between the two; and if the above-named Maria Eliza J. Dana and Augusta Paulina J. Dana should both die, and not leave any issue from their bodies begotten, in that case, I will that my real and personal estate be equally divided between my sister Hannah Pierce or her heirs, and the heirs of my sister Mary Hunlock, in two equal shares."

Augusta Dana, one of the granddaughters mentioned in the *will*, died in October, 1847, in her minority, unmarried and without issue.

Maria Dana was born on the 31st May, 1828, and was married to Henry Hakes, the defendant in this action, in June, 1849; and she died without issue on the 19th December, 1849.

The widow of the testator, Mrs. Hannah Jameson, died, unmarried, in March, 1851.

The writ of ejectment in this case was issued, after Mrs. Jameson's death, on the 3d April, 1851, and was served on the 5th April, 1851, on Henry Hakes, the defendant, who was in possession of the premises.

The cause came on for trial on the 12th August, 1853, and a recovery was asked upon proof of the will, of the death of Hannah Jameson the widow, and the granddaughters of the testator, and of the fact that James and Samuel Hunlock were the proper representatives of the testator's sister, Mary Hunlock, who was dead at the date of the will.

On part of *defendant*, was offered *the record* of a deed from Hannah Jameson to Maria E. Hakes, dated 12th December, 1849, "granting, surrendering and yielding up" in consideration of love and natural affection for my granddaughter and the sum of one dollar, all that lot, farm, &c., in Hanover township, on which she (Mrs. Hannah Jameson) had lately been residing, being the same farm whereon Samuel Jameson, deceased, lived, at and immediately before his death " to the intent and purpose that the estate for life, or life interest of me, the said Hannah Jameson, in and to every part and parcel of the said farm," (&c.) " and its appurtenances, may merge and be absolutely extinguished, and the said Maria E. Hakes may be in the actual possession of said premises." This deed was acknowledged before Edwin More, " President Judge of the County Court in and for the County of Delaware, in the State of New York," on the 12th December, 1849;.

[Pierce v. Hakes.]

and that the judge was county judge, and the authenticity of the certificate of acknowledgment was certified by the clerk of Delaware county, with the county seal annexed, on the 13th December, 1849. The defendant's counsel objected to the admission of the record of the deed, on the ground that the deed itself was defectively acknowledged. The *record* of the deed was admitted, and this decision was the subject of the plaintiffs' *first* bill of exceptions.

The defendant then offered in evidence *the record* of a deed from Harry Hakes and Maria E. Hakes his wife, to Lyman Hakes for the same land, in consideration of one dollar, the grantors stating and declaring that it was their and each of their intention thereby and by virtue of said conveyance and assurance, to debar any estate tail in possession, reversion, or remainder that they or either of them had in the lands granted. This deed purported to be dated on the 13th day of December, 1849, and was acknowledged before the same Judge More, in Delaware county, New York, as President Judge in and for the county of Delaware —his official character as county judge being certified by the county clerk under the county seal. The plaintiffs' counsel objected to the reception of the record in evidence, and referred to the affidavit of Hunlock, one of the plaintiffs, and a notice to produce the deed, and asked the Court to make a peremptory order on the defendant to produce the original deed. The Court declined to do so, and the plaintiffs then objected to the record being given in evidence on the ground that the acknowledgment and certificate were defective; and because, professing to bar an entail, it could not be executed out of the state. The record was admitted in evidence, and this decision was the subject of the *second* bill of exceptions.

The defendant then offered in evidence minutes of the Court of Common Pleas of *Luzerne county* of 16th January, 1850, it being one of the days appointed for the acknowledgment of sheriff's deeds; together with the record of the deed from Harry Hakes and wife to Lyman Hakes in Sheriff's Deed Book, No. 13, page 143. The plaintiffs objected on the ground that the entry of the record and motion was not sufficient, and because the grantor, Mrs. Hakes, had died before the motion was made; because it did not appear that any proclamation was made or any notice given to the other parties in interest; and because the motion was made for Harry Hakes and wife, who had at the time no interest in the property. It was urged on behalf of plaintiffs, that if, before Mrs. Hakes' death, her deed to Lyman Hakes had not been delivered, then her death would prevent its operation for any purpose, and it would be simply void, and if it had been delivered, then the motion on her behalf could not, subsequently to her death, be made. The objections were overruled, and the evidence admitted, and the Court sealed the plaintiffs' *third* bill of exceptions.

[Pierce *v.* Hakes.]

The defendants then offered the docket showing the record entry of the motion and deed to bar the entail. The plaintiffs objected on the ground stated in the last bill. The evidence was admitted, and the Court sealed the *fourth* bill.

The defendant then proved the fact of his residence on the premises in dispute from the fall of 1850 up to the time of the trial, and gave in evidence *the deed from Lyman Hakes to himself* dated 14th May, 1850, and rested.

*The plaintiffs* then called Ann Carswell, who was a sister of Mrs. Samuel Jameson, and who testified that Maria E. Hakes, at the time of and before her marriage with the defendant, was in delicate health, &c.

It was also offered to be proved by her that Maria, before her marriage, told her grandmother, Mrs. Jameson, in presence of the witness, that L. Hakes said her grandfather's will could be broken, and that said Hakes advised the attempt to break the will, &c. The defendant objected to this offer. The evidence was rejected, and the Court sealed the plaintiffs' *fifth* bill.

The defendant produced *the original deed* from Mrs. Hannah Jameson to Maria E. Hakes of 12th December, 1849; and the *plaintiffs* then called Jameson Harvey, who testified that he was acquainted with Mrs. Jameson's handwriting, and that the signatures to this deed and the receipt appended thereto, were not in her handwriting —that while her first name (Hannah) was spelled properly in the body of the deed, it was erroneously spelled (Hanah) in the signatures, and that the last name was improperly spelled *Jameison* in the signature, while she always wrote it *Jameson*.

Two witnesses were then called, who testified that the body of this deed was in the usual handwriting of *Lyman Hakes*, and that the signatures were in his handwriting, but in a disguised form. Another witness said he should not think the signatures to be in the handwriting of Lyman Hakes. Caroline Hakes, a witness subsequently called by the defendant, stated *that the name of Mrs. Jameson was signed by Lyman Hakes*, and that *she* (Mrs. Jameson) *took hold of his hand*.

The original deed from Mrs. Jameson to Mrs. Hakes was then given in evidence by the plaintiffs for the purpose of showing handwriting, and the plaintiffs rested. On part of defendant it was alleged that before any testimony was given as to the handwriting, it was admitted that Lyman Hakes had written the name of Mrs. Jameson at her request.

The *defendant* called several witnesses who testified as to the state of Maria's health, and the circumstances connected with the execution of the deeds. In the course of this testimony, he offered to prove by S. Dana and others, that on and after the return of Hannah Jameson from the state of New York, in December, 1849, she stated that she had transferred, or deeded, or con-

veyed her interest in the lands demanded in this ejectment to the defendant. The plaintiffs objected to this offer. The evidence was admitted, and the Court sealed the plaintiffs' *sixth* bill.

In the course of his rebutting testimony, *the defendant* offered to prove that at the time the deed from Mrs. Hannah Jameson to Maria E. Hakes was executed, Mrs. Jameson gave directions to L. Hakes to sign the deed for her; and that at the time of executing the deed of Harry Hakes and Maria E. Hakes to Lyman Hakes, Jr., Maria signed the said deed, heard its contents read over, said she understood and acknowledged it, and that at the time, she was in the possession of her mental faculties. The plaintiffs objected to this offer. The Court admitted the evidence, and sealed the *seventh* bill.

After the closing of the defendant's rebutting testimony, *the plaintiffs* proposed to show the declarations of Mrs. Jameson, made *after* she returned from New York, that she executed no paper while she was gone, of any kind, and continued to repeat such declarations till the day of her death. The defendant objected. The evidence was rejected, and the Court sealed the plaintiffs' *eighth* bill of exceptions.

The testimony on both sides being closed, CONYNGHAM, President Judge, instructing the jury that there were no facts to be submitted to them, and reserving the several questions in the cause, directed a verdict *pro forma* for the plaintiffs, and granted a rule to show cause why judgment should not be entered in favor of the defendant *non obstante veredicto*. Upon argument of this rule, the Court filed an opinion in which it was held that under the will of Samuel Jameson, his widow, Hannah, took a life estate in his real property, with vested remainders in his granddaughters in tail, as tenants in common, having also by implication in each other's shares contingent cross remainders in tail, dependent on survivorship; that after the death of Augusta Dana, Maria, the survivor, had a vested remainder in tail, to be acquired in possession on the determination of the previous particular estate given to the widow; and that the present plaintiffs took contingent remainders in fee, to vest on the determination of the life estate and estate tail, or any interests legally issuing out of them. The Court held also that Mrs. Jameson's deed to Maria of 12th December, 1849, was good and sufficient, and well executed and acknowledged, and merged the life estate in the inheritance, and gave to Maria an estate tail, no longer in remainder, but in possession of the land. The deed of 13th December, 1849, of Harry Hakes and Maria his wife, to Lyman Hakes, not having been produced in Court in the lifetime of Maria, pursuant to the provisions of the Act of Assembly of 16th January, 1799, was held not to have barred the estate tail, but to be sufficient to convey to the grantee the estate for life of Harry Hakes, the husband of Maria E. Hakes, as tenant

by the curtesy; and Lyman Hakes having subsequently reconveyed to Harry Hakes his interest in the land, the latter was decided to be entitled to the enjoyment of it during his life. And the Court entered judgment in favor of *the defendant, non obstante veredicto*.

The first eight of the assignments of error related to the bills of exception in their order. The 9th was to the instruction that there was no fact for the jury to try with regard to the legality of the execution of the deed by Mrs. Jameson to Maria Hakes. The 10th, to the instruction that the whole case was one of law, and that the verdict should be for the plaintiffs. The 11th was to the instruction that, by the will of Samuel Jameson, his widow Hannah took a life estate in his real property (the condition of not marrying, under the facts, not affecting this view of the case), with vested remainders, &c., as above stated; and to the instruction as to the result after the death of Augusta Dana, as before stated. The 12th was to the instruction that on the 12th day of December, 1849, the day when it was contended that Mrs. Jameson made her deed to Maria Hakes, she, Mrs. Jameson, continuing to be the widow of the testator, had a freehold estate for life in the premises, subject to the contingency of marrying; and that Maria Hakes had an estate tail in remainder in the same.

The 13th assignment related to the acknowledgment of the deed of Mrs. Jameson, and its effect.

14th. The Court erred in their opinion in saying:—

"Had Harry Hakes on the 13th Dec. 1849, when the interest of Mrs. Jameson was conveyed to his wife, a right of possession as tenant by the curtesy? We have already said that by the release of Mrs. Jameson to Maria Hakes, in our opinion the two estates for life and in tail meeting in the same person, being for the same land, the two connected in privity of right and title, the latter being the more extensive and immediately expectant, without intervening right, on the former, the former estate became merged, and the tenant in tail became the immediate vested holder of the estate of inheritance, subject only to the limitation of the will:" *Lee on Title* 255 being cited.

15th. The Court erred in their opinion in saying, that by the deed of Mrs. Jameson, "Maria Hakes acquired the potential or right of seisin to this land; and by this acquisition her husband thereby became tenant by the curtesy:" 8 *Ser. & R.* 175, Stoolfoos *v.* Jenkins; 5 *Rawle*, Chew *v.* Commonwealth, were cited by the Court.

The 16th and 17th assignments related to the judgment.

The 8th section of the Act of 10th April, 1849, provides that deeds of land within this state that have or may be made out of this state, the execution being duly acknowledged or proved by one of the subscribing witnesses before one " of the judges or

[Pierce v. Hakes.]

justices of a *court of probate* or court of record of any state or territory within the United States, *and so certified* under the hand of the judge and seal of the Court," shall be valid, &c.

*H.* and *C. E. Wright, Woodward,* and *McClintock,* were for plaintiffs in error.—The 8th sect. of the Act of 10th April, 1849, requires that deeds made out of this state for lands within it be acknowledged or proved before a judge of a court of probate or court of record of any state or territory in the United States, and so certified under the hand of the said judge and seal of the Court. The *record* of the deed was received upon production of Statutes of New York, showing that the court was a court of record. It was contended that such fact should have been shown *in the certificate :* 4 *Ser. & R.* 290; 1 *Watts* 329; 2 *Id.* 334; 14 *Ser. & R.* 432.

It was also contended that deeds *to bar entails* were not within the provision of the 8th section of the said Act of 1849.

As to the *sixth* bill, it was contended that the declarations of Mrs. Jameson that she had transferred her interest in the lands in dispute to the defendant, were inadmissible. She was not a party to the suit—she was dead—and if she had conveyed, her deed was the best evidence of it: 2 *Ser. & R.* 473; 1 *Barr* 208; 2 *W. & Ser.* 221; 1 *Yeates* 305; 1 *Bin.* 470; 9 *Ser. & R.* 268; 15 *Id.* 71.

As to the 8th assignment. Parol evidence of fraud and imposition are admissible for the purpose of contradicting a certificate : 3 *Wh.* 457; 9 *Barr* 14; 15 *Ser. & R.* 72.

As to the 11th and 12th assignments. The Court held that Maria E. Hakes took *an estate tail* under the will, and that the plaintiffs took contingent remainders in fee, to vest on the determination of the life estate and estates tail, or any interests legally issuing out of them. But the *plaintiffs* contended that Maria, as the survivor of the granddaughters, took an estate *in fee* under the will, with a condition that this estate might be defeated on failure of issue at her death, and that the plaintiffs took by way of executory devise.

The will is to be construed according to the intention of the testator. The intention of the testator was to vest a fee in his granddaughters, subject to being defeated by both of them dying without children. The word *issue* in *the first clause* in question, was used as equivalent to "heirs," and the material question is the intent of the testator in the further terms, that if Maria and Augusta, his granddaughters, "both die and not leave any issue from their bodies begotten, in that case, I will that my real and personal estate be equally divided between my sister Hannah Pierce or her heirs, and the heirs of my sister Mary Hunlock." If Maria had left a child, would not such child have taken *a fee,* and thus the devise over been defeated? The point of time at

[Pierce *v.* Hakes.]

which the devise over was to operate, if ever, was at the death of both of the granddaughters; if they died with issue from their bodies, or children, then the estate went over in fee to the plaintiffs by way of *executory devise: 1 Ser. & R.* 152; 3 *Rawle* 75; 1 *Ser. & R.* 155; 1 *Ld. Ray.* 203; 10 *Barr* 498, Johnson *v.* Currin; 3 *Wh.* 209–218; 2 *Yeates* 414; 1 *Peere Wms.* 523; 1 *Barn. & Ald.* 713; 7 *Term Rep.* 589; 1 *Johns. Rep.* 439; 5 *Day* 517; 4 *Kent* 278; 6 *Barr* 45; 2 *Barr* 335. The words "*in that case*" are equivalent to *then:* 7 *Term Rep.* 557.

As to the 13th assignment. It was contended that the deed of Mrs. Jameson was not valid to convey her estate in the land, because the acknowledgment was defective; and further, because the deed was totally void, as not being signed by her or her agent lawfully authorized thereto by writing. The evidence was, that Lyman Hakes wrote her name to it: 3 *Watts* 129; 10 *Watts* 67; 1 *Parsons* 90.

As to the 14th and 15th assignments. If the deed of Mrs. Jameson were inoperative, then the life estate of Mrs. Jameson continued in her, and she survived Maria Hakes; and whatever estate Mrs. Hakes had *under the will,* she had not potential seisin or the right of seisin in the land, which are necessary to entitle her husband to tenancy by the curtesy: 8 *Ser. & R.* 167, Stoolfoos *v.* Jenkins; 5 *Rawle* 161.

Whatever the rights of Maria Hakes *under the will* were, she had divested herself of them by the conveyance of her husband and herself to Lyman Hakes of the 13th December, 1849. Her husband had no interest to be divested by the conveyance. She became married *after* the passage of the Act of 1848. By that Act, every description of property belonging to her is to be enjoyed by her as her separate property. The husband has no title in it until her death: 1 *Parsons* 489.

It was contended that the claim of the defendant had therefore entirely failed, and that judgment should have been entered for the plaintiffs.

*Collins* and *Hakes,* for defendant in error.—It is contended that Hannah Jameson, the widow, took a defeasible freehold estate for her life, vested in interest and in possession: 1 *Th. Co. Litt.* 484; 2 *Bl. Com.* 84–5; 4 *Kent* 23. Also, that the granddaughters, at the testator's death, took vested remainders in common, in general tail expectant on the widow's freehold for life. They took remainders vested: 4 *Kent* 195; 3 *Greenleaf's Cruise* 224; 2 *Bl. Com.* 89; *Preston on Estates* 89; 2 *Fearne* 54; 1 *Hilliard* 494; 1 *Dall.* 175; 12 *Ser. & R.* 112; 8 *Watts* 432; 3 *Harris* 83.

The two granddaughters took vested remainders in common: 3 *Greenleaf's Cruise* 405–6; 2 *Jarman* 157–161.

They took an *estate tail* in remainder: 2 *Jarman* 328; 3 *Green-*

[Pierce v. Hakes.]

*leaf's Cruise* 295; *Thos. Coke* 427; 2 *Roper on Leg.* 353; *Hayes on Est. Tail* 35; 2 *Fearne* 247; Wild's Case, 6 *Rep.* 16; 1 *Eden* 473; *Cro. Eliz.* 410; 1 *Doug.* 321; 1 *East* 269; 1 *Mer.* 20; 2 *Keen* 47; 3 *Ser. & R.* 470–477, Clark v. Baker; 1 *Yeates* 332.

The devise over to the present plaintiff is indicative of an intent to give *an estate tail*: 9 *Watts* 447; 8 *Harris* 509, Vaughan v. Dickes; 6 *Id.* 72; 1 *Wh.* 139; 17 *Ser. & R.* 441; 4 *Ser. & R.* 409; 1 *Id.* 293; 2 *Yeates* 4; 4 *Barr* 102–8; 3 *Rawle* 59; 1 *Dal.* 47; 2 *Bin.* 455; 3 *W. C. C. Rep.* 369.

It was also contended that, under the will in question, Maria and Augusta took contingent cross remainders *in tail* by implication of law: 2 *Bl. Com.* 281; 2 *Jarman* 458; 4 *Kent* 201; 3 *Greenleaf's Cruise* 412; 1 *Thos. Coke* 603. No part of the estate is to go to Hannah Pierce or her heirs and the heirs of Mary, until *both* Maria and Augusta be dead without leaving any issue from their bodies.

In October, 1847, Augusta died unmarried and without issue, leaving Maria surviving; and if this view be correct, the whole estate in tail vested in Maria. There was then a life estate in the widow, and remainder in tail in Maria, remainder in fee to the plaintiffs. On 12th December, 1849, the widow, being actually seised of her freehold, surrendered her life estate to Maria. The actual entry of Maria upon the land was not necessary: 2 *Thos. Coke* 443, note A; 3 *Greenleaf's Cruise* 555. The life estate of the widow was merged in the immediate remainder in Maria, and the only estates then existing in the land were the estate tail general of Maria vested in interest and in possession, and the remainder in fee simple vested in these present plaintiffs. On the 13th December, 1849, Maria E. Hakes and Harry Hakes her husband conveyed the land to Lyman Hakes, Jr., to bar the entail, &c.

It was contended that the limitations in the will were not *executory devises*. Mr. Fearne divides executory devises of real estate into two kinds (1 *Fearne* 399). The *first* is where the devisor parts with the whole fee simple, but upon some contingency qualifies that disposition, and limits an estate on that contingency: 2 *Id.* 50. The limitation to the granddaughters was to them and to their issue. If the limitation to them was of the whole fee simple, then the word *issue*, unexplained in a will, is synonymous with *heirs*. The limitation to the *plaintiffs* was not a parting with by the testator of *the whole fee simple* to them. Thus, neither the granddaughters nor the plaintiffs took the whole fee simple, and therefore neither had an executory devise of the *first* kind.

The *second* kind of executory devise under the division of Mr. Fearne is, "when the devisor gives a future estate to arise upon a contingency, but does not part with the fee at present." When a contingency is limited to depend on an estate of freehold which

is capable of supporting a remainder, it shall never be construed to be an executory devise, but a contingent remainder only: 2 *Saunders* 380; 3 *Term Rep.* 763; 3 *Cruise* 461; 2 *Yeates* 400; 3 *Ser. & R.* 441; 1 *Watts* 475; 2 *Ser. & R.* 486. Mr. Jarman says, "with respect to the cases in which the devise is executory, notwithstanding the creation of a prior estate of freehold, it is to be observed that, to constitute the ulterior limitation an executory devise in such a case, the precedent estate must not be merely *liable* to be determined before the ulterior limitation takes effect (as such liability only renders the remainder contingent), but it must be *necessarily* determinable before the taking effect of the ulterior devise:" 1 *Jarman* 778.

In the present case there was an estate of freehold devised to the widow, which vested in actual possession on the death of the testator. This estate of freehold was capable of supporting a contingent remainder. After the decease of the widow the estate was to go to the granddaughters and their issue. It is true that the widow might marry again, and then her estate would cease; and if she still lived, the interest of the granddaughters would have no freehold to support it. They could not then take whilst the widow lived. So the plaintiffs could not take, because the granddaughters were not dead without leaving issue. So long as the widow continued unmarried, the interest of the granddaughters had a freehold to support it. But, according to authorities, if the freehold vested so that the subsequent limitations had a freehold support, no accident or subsequent event could make the subsequent limitations enure as an executory devise. If this is so, then the limitations in this will cannot be supported as an executory devise of the second kind.

Further, the contingency upon which an executory devise is to take effect must happen within a short space of time, such as a life or lives in being and twenty-one years, and in some cases some months more thereafter. Now the limitation to the plaintiffs is, if both the girls shall die and not leave any issue from their bodies begotten, in that case to the plaintiffs. Now, according to the rule, all executory limitations that are to take effect after a general failure of the heirs or issue of a prior taker, are void *ab initio;* or according to Cruise (3 *Cruise* 452) or Smith, it must be so limited that from the moment of the limitation it may be said that it will necessarily take effect *within a life or lives in being and twenty-one years* after. See cases in 3 *Har. Digest*, p. 6–836; 1 *Jarman* 231.

As to whether the estate was legally barred. Under the Act of 1799 the proceeding to bar an entail is entirely *ex parte.* It is not to receive any aid from the Court, but the Court is resorted to to give publicity to the deed and to perpetuate the evidence of it

[Pierce v. Hakes.]

by having it entered on the public records : 4 *Harris* 95, George *v.* Morgan.

It is not required by the Act of Assembly that to bar an estate tail by deed the tenant should reside *in Pennsylvania.* The tenant himself need not appear in Court and acknowledge the deed ; a purchaser may have the enrolment effected : 4 *You. & Coll.* 228. The deed, if enrolled within the prescribed time, takes · effect from the execution as if enrolment had not been required. But a purchaser for a valuable consideration under a subsequent deed previously enrolled takes precedence : *Hayes on Conveyancing* 105. As to the *acknowledgment.* The Acts of Assembly of New York show that the County Courts are courts of record, and the County Judge the highest judicial officer resident in the county, and competent to take the acknowledgment of deeds : 3 *Yeates* 424 ; 5 *Bin.* 296.

After evidence given to disprove the signature of Mrs. Jameson, it was competent to explain how it took place. She assisted in writing her name, and afterwards acknowledged the deed.

The husband's interest as tenant by the curtesy is not affected by the Act of 1848 : 6 *Harris* 509, Peck *v.* Ward. His right by the curtesy remains as it was before the passage of the Act, except that he has not power to sell or encumber it. His right of enjoyment of the estate still exists. He is not bound to account to his wife for the occupation, nor, in case of his death, would his executors or administrators be accountable to the wife for the husband's use of it. In the 10th section of the Act of 1848 is a proviso, that nothing contained in the Act "shall be taken to deprive the husband of his right as tenant by the curtesy." His right as tenant by the curtesy is as real as her right of dower. The birth of issue as a constituent of curtesy initiate is dispensed with : 10 *Barr* 399. See also section 20 of Act of 22d April, 1850, *Acts* 553, explanatory of the Act of 1848. If the entail were not barred, and if the issue of Mrs. Hakes, if she had any, would have inherited, then on her dying intestate her husband would have been tenant by the curtesy.

The opinion of the Court was delivered by

Lowrie, J.—It is impossible to avoid the conclusion that the estate granted by Samuel Jameson to his granddaughter was an estate tail; but, as it depended for its actual enjoyment upon the determination of a life estate, it becomes important to ascertain whether the deed of surrender was well proved; for a curtesy estate cannot attach to a mere remainder.

This deed was acknowledged before the President Judge of the County Court of Delaware county, New York, and certified by him under his hand and the seal of the Court. It is objected that the acknowledgment is not duly certified under the Act of 10th

April, 1849, because the judge does not certify the County Court to be a court of record; and that this defect is not cured by the proof that it is so. It is admitted that such a certificate by a justice of the peace is good, though he omits to state his official character. It follows that it is the fact, and not the certificate of a given official character that is required. And we see nothing in the Act of 1849 that indicates an intention to change this policy. We cannot construe Acts of Assembly in such a way that even their general intent cannot be understood without the aid of a professional criticism. Where they are intended as general rules to regulate the relations of citizens, they ought, if possible, to be construed in the way that a man of ordinary intelligence would understand them: otherwise we use them to bait the traps that rogues set for honest men. The impropriety of a strict and literal construction of such rules has been often rebuked by curative Acts of Assembly, which rub hard against constitutional principles, and which are sustained only because of their manifest equity as rules of construction.

There is some evidence that the deed of surrender was not actually executed by the grantor, which is met by evidence that she was assisted by another in making her signature, or that it was made for her by another at her request, and by the proof that she acknowledged and delivered it as her deed. That cannot be called a deed executed by an agent, that is acknowledged and delivered by the grantor personally; and as this fact clearly appears, the validity of the deed is not affected by any doubt cast upon the mode of signing. There was no evidence to justify a verdict that she had not delivered it as her deed, and it follows that there was a valid surrender of the particular estate to the owner of the remainder in tail. The declarations of the owner of the particular estate, after that, could not tend to alter the result. And if it was attempted to invalidate the surrender by charging it with being affected with a fraud upon her, then her declarations were admissible to rebut the charge. It is not these declarations, but her surrender and the collateral legal principles, that affect the remainders. If she had an estate to surrender, all her acts that legally tend to show that she did surrender it are evidence of the fact, however serious to others may be the consequences of it.

The next step in this case is a very plain one. On the surrender of the particular estate the remainder in tail became immediately vested in possession and enjoyment, and then the title of the husband to curtesy became initiate, and the death of the wife made it complete.

But we have not as yet alluded to the transaction by which it was attempted to bar the estate tail, nor are we called upon to declare that it was effectual for the purpose intended, if the judgment can be sustained without it. It is argued that that proceed-

[Pierce v. Hakes.]

ing has failed of its purpose, and yet been effectual in producing an unintended result: that the estate in fee simple or fee tail having been granted away in the lifetime of the wife, and not having been reconveyed before her death, she did not die seised and of consequence there can be no curtesy.

If we treat the conveyance made to Lyman Hakes in order to bar the estate tail as a real passing of the title out of the tenant in tail, then this would be so. But if we treat it as a mere form of barring the entail, then the legal title alone passed to Lyman Hakes, and the equitable title remained in the tenant in tail, as an equitable fee simple or fee tail, according as the bar of the entail was effectual or not. Certainly we must so treat the transaction, unless we hold that a deed made, for the consideration of one dollar and merely as a step in barring an entail, conveys an absolute title, which is impossible.

If however we cannot thus treat it, then surely we cannot sustain a part of an unfinished proceeding so as to produce a result not at all contemplated by the parties; and if the deed to Lyman Hakes is of this character, it must be treated as incomplete and void. Take this case therefore in any way, the judgment below was right. If the proceeding to bar the entail was totally fruitless, then the husband is in as tenant by the curtesy of the estate in fee tail with remainder to the devisees. If it answered that purpose and only that, then he is in as tenant by the curtesy of an estate in fee simple, with reversion to the heirs of the wife. If it was totally void by reason of its incompleteness, the curtesy and entailment remain. If it passed the legal estate in fee simple to Lyman Hakes in trust for the grantor, then the case stands as a curtesy out of an equitable fee smple estate.

Judgment affirmed.

Mr. Justice WOODWARD, having been of counsel in this cause, did not sit at the argument.